NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

SUN LAKES MARKETING LIMITED PARTNERSHIP, et al.,
*Plaintiffs/Appellees*,

v.

STATE OF ARIZONA, ex rel. DEPARTMENT OF REVENUE,
*Defendant/Appellant*.
No. 1 CA-TX 16-0011
FILED 10-19-2017

---

Appeal from the Superior Court in Maricopa County
No. TX 2010-000517
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

---

COUNSEL

Fennemore Craig, P.C., Phoenix
By Patrick Irvine
*Counsel for Plaintiffs/Appellees*

Arizona Attorney General's Office, Phoenix
By Scot G. Teasdale
*Counsel for Defendant/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**    The Arizona Department of Revenue (the "Department") appeals from the tax court's entry of summary judgment against it. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2**    Appellees are developers and utility companies of master-planned communities and their direct and indirect owners (the "Taxpayers").[1] During the relevant time period, Taxpayers developed six active-adult master-planned communities in Arizona.[2]

**¶3**    For tax years 1998 through 2004, Taxpayers filed amended income tax returns seeking credits pursuant to Arizona Revised Statutes ("A.R.S.") sections 43-1081 and 43-1170, which provide income tax credits for the purchase of pollution control property.[3] Taxpayers claimed credits

---

[1]  The taxpayers in this appeal are Sun Lakes Marketing Limited Partnership; Sun Lakes Properties, Inc.; Saddlebrooke Development Company; Pebblecreek Properties Limited Partnership; Pebblecreek Development Company; Robson Ranch Quail Creek, LLC; Arlington Property Management Company; R.C. Employee Incentive LLC; Sun Lakes-Casa Grande Development LLC; Robson Ranch Mountains, LLC; Park San Carlos, LLC; Linda R. Robson-Weiser; Steven S. Robson; Kimberly F. Robson; Edward J. Robson; Robert D. Robson; Kimberly A. Robson Ortiz; and Douglas J. Weiser.

[2]  The claims of two utility companies, Saddlebrooke Utility Company and Pima Utility Company, were settled in tax court.

[3]  In 2005, the Legislature prospectively amended the subject statutes to restrict the type of property qualifying for these income tax credits. Accordingly, the parties' arguments, the tax court's decision, and our

for expenses they incurred in constructing and installing wastewater collection systems, wastewater treatment facilities, systems for distribution of treated sewage, and storm water management systems in the master-planned communities.

¶4        The Department denied Taxpayers' claims, and Taxpayers filed a protest. After exhausting their administrative remedies, Taxpayers appealed to the tax court.

¶5        In tax court, the parties cross-moved for summary judgment. The tax court granted partial summary judgment in favor of the Taxpayers, concluding that they qualified for the income tax credits, but leaving the calculation of the credits and associated refunds for trial. Thereafter, the parties stipulated to the amount of the credits and refunds. The tax court entered judgment, and the Department timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.04(G) (2016), 12-120.21(A)(1) (2016), and 12-170(C) (2016).

## ANALYSIS

¶6        This court reviews the tax court's grant of summary judgment and its interpretation of the relevant statutes *de novo*. *See Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198 (1995); *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 594 (App. 1991). Because A.R.S. § 43-1081 and § 43-1170 provide tax credits, we strictly construe these statutes. *See Ariz. Dep't of Revenue v. Raby*, 204 Ariz. 509, 511, ¶ 16 (App. 2003). We will not, however, interpret the statutes so strictly "as to defeat or destroy the [legislative] intent and purpose." *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 10 (2004) (citation and quotations omitted).

### I.        The Plain Language of A.R.S. § 43-1081 and § 43-1170

¶7        When interpreting a statute, we "look to the language of the statute and will ascribe plain meaning to the terms unless they are ambiguous." *Mago v. Mercedes-Benz, U.S.A., Inc.*, 213 Ariz. 404, 408, ¶ 15 (App. 2006) (citing *Rineer v. Leonardo*, 194 Ariz. 45, 46, ¶ 7 (1999)). The applicable subsections of A.R.S. § 43-1081 and § 43-1170 in effect at the time relevant to this appeal provided:

---

analysis is limited to interpretation and application of the pre-amendment statutes.

(A) A credit is allowed against the taxes imposed by this title for **expenses that the taxpayer incurred during the taxable year to purchase real or personal property that is used in the taxpayer's trade or business in this state to control or prevent pollution**. The amount of the credit is equal to ten per cent of the purchase price.

(B) **Property that qualifies for the credit under this section includes** that portion of a structure, building, installation, excavation, machine, equipment or device and any attachment or addition to or reconstruction, replacement or improvement of that **property that is directly used, constructed or installed in this state** for the purpose of meeting or exceeding rules or regulations adopted by the United States environmental protection agency, the department of environmental quality or a political subdivision of this state to prevent, monitor, control or reduce air, water or land pollution . . . .

A.R.S. §§ 43-1081(A)-(B), -1170(A)-(B) (emphasis added).[4]

**¶8**        In *Microchip*, this court interpreted A.R.S. § 43-1170 and determined that expenses a taxpayer incurred installing storm water and sewage control systems in its manufacturing plants qualified for the tax credit. 230 Ariz. at 306, ¶ 8. We rejected the Department's argument that the property's "primary purpose and function" must be pollution control, concluding instead that if the property is part of an "integrated system [intended] to control or prevent pollution," then the property qualifies for

---

[4]        The language in A.R.S. § 43-1081(A) and § 43-1170(A) was identical. Section 43-1081 applies to individuals, while § 43-1170 applies to corporations. As acknowledged at argument by the Department, as well as in its Petition for Review in *Microchip Tech. Inc. v. State*, 230 Ariz. 303 (App. 2012), Subsections (A) and (B) are related, and must be read together. ("Like many tax statutes, A.R.S. § 43-1170 simply introduces the credit in its subsection (A) and then provides further definitions and exclusions in its following subsections.") We agree, and interpret A.R.S. § 43-1081 and § 43-1170 in a way that harmonizes Subsections (A) and (B). *See Advanced Prop. Tax Liens, Inc. v. Sherman*, 227 Ariz. 528, 531, ¶ 14 (App. 2011) (citing *Morgan v. Carillon Invs., Inc.*, 207 Ariz. 547, 549, ¶ 7 (App. 2004)).

the tax credit.[5]  *Id.* at 307-08, ¶¶ 13, 16 ("Neither the language nor the purpose of the statute support an interpretation that Taxpayer's property must have only one purpose—i.e., conforming to pollution-control regulations—to qualify for the tax credit.").

**¶9**　　　　Here, Taxpayers' claimed expenses are similar to the expenses claimed in *Microchip*.[6]  Rather than arguing that Taxpayers' expenses do not qualify for the credit,[7] the Department argues here that Taxpayers are not the proper claimants.  Specifically, the Department argues that Taxpayers cannot claim the credits because they do not "use" the property "in their trade or business to control or prevent pollution" as required by the statutes.

**¶10**　　　　We interpret the phrase "used in the taxpayer's trade or business" to mean the property is utilized in the taxpayer's overall business. Here, Taxpayers' business is developing master-planned communities.  As part of that development, Taxpayers are required by law to construct, install, and provide systems to control and prevent the unlawful discharge of wastewater and storm water in the planned communities.  *See* Ariz.

---

[5]　　　　Taxpayers and the Department jointly asked the tax court below to stay their litigation pending our decision in *Microchip*, recognizing that "several of the legal issues that are central to this matter may be resolved" by the *Microchip* decision.  The tax court granted the requested stay.  This court issued its decision in *Microchip* on June 5, 2012, and the Arizona Supreme Court denied the Department's petition for review on October 30, 2012.  *See Microchip*, 230 Ariz. at 303.

[6]　　　　In *Microchip*, the taxpayer sought credits for expenses incurred in:

> [D]edicating real property to use for storm-water basins, in making improvements required for the installation of storm-water basins and their integrated components, and in making improvements required for the installation of sewer systems. Other property expenses included storm sewers, sanitary sewers, retaining walls, fencing footings, a block wall, a fence, a sprinkler system, a garage roof, floor drains and drains on the office roof.

*Microchip*, 230 Ariz. at 305, ¶ 2.

[7]　　　　The Department concedes that the subject equipment, property, and expenses otherwise qualify for the credit.

Admin. Code R18-5-405 ("Where plans for a subdivision include a public water supply system, or public sewerage system, it shall be the responsibility of the subdivider to provide the facilities to each lot in the subdivision prior to human occupancy.").

¶11　　　In arguing that Taxpayers are not proper claimants, the Department relies on *Watts v. Ariz. Dep't of Revenue*, in which this court addressed whether taxpayers who leased water trucks and wagons to third parties qualified for a credit under A.R.S. § 43-1170. 221 Ariz. 97, 101, ¶¶ 16-17 (App. 2009). In *Watts*, the taxpayers themselves did not control how the lessees used the property, and only some of the lessees' uses of the property related to pollution control. *Id.* at 100-01, ¶ 10. Under that set of facts, this court concluded that taxpayers were not eligible for the credit because they did not use the property in their trade or business to control or prevent pollution. *Id.* at 102, ¶ 23.

¶12　　　This case is different. Here, Taxpayers themselves, as part of their real estate development business, were required to provide wastewater collection and storm water management systems. The subject property was clearly "used" in the completion of the master-planned communities that is Taxpayers' trade or business. Under these circumstances, and except as otherwise negotiated with any ultimate transferee, the pollution control property is "used[8] in the [Taxpayers'] trade or business" as required by the statutes.[9]

*II.　Transfer of Wastewater Collection Systems to Utility Companies*

¶13　　　The Department further argues that Taxpayers are not entitled to tax credits for the wastewater collection systems they installed because Taxpayers transferred those systems to utility companies before the systems were operated. Taxpayers respond by arguing that they need not have operated the systems to be entitled to the credit; under the statutes,

---

[8]　　The term "used" is classically defined as "employed in accomplishing something," Merriam-Webster Dictionary 1301 (10th ed. 1993), or "employed for a purpose; utilized." Dictionary.com, http://dictionary.com/browse/used (last visited Oct. 10, 2017).

[9]　　As such, we need not reach Taxpayers' alternative argument that, of necessity, Taxpayers "used" the installed equipment before transferring the equipment to utility companies and homeowner associations.

they argue, construction or installation is sufficient. Taxpayers rely on A.R.S. § 43-1081(B) and § 43-1170(B), which provided:

> **Property that qualifies for the credit under this section includes** that portion of a structure, building, installation, excavation, machine, equipment or device and any attachment or addition to or reconstruction, replacement or improvement of that **property that is directly used, constructed or installed** in this state for the purpose of meeting or exceeding rules or regulations adopted by the United States environmental protection agency, the department of environmental quality or a political subdivision of this state to prevent, monitor, control or reduce air, water or land pollution . . . .

A.R.S. §§ 43-1081(B), -1170(B) (emphasis added).

**¶14** For the credit to apply, Subsection (A) of A.R.S. § 43-1081 and § 43-1170 requires that property be "used in the taxpayer's trade or business . . . to control or prevent pollution." Subsection (B) of the same statutes describes qualifying property as property that is "directly used, constructed or installed" for the purpose of meeting or exceeding pollution rules and regulations. *See* A.R.S. §§ 43-1081(B), -1170(B). As previously noted, we interpret A.R.S. § 43-1081 and § 43-1170 in a way that harmonizes Subsections (A) and (B). *See Advanced Prop. Tax Liens, Inc.*, 227 Ariz. at 531, ¶ 14 (citing *Morgan*, 207 Ariz. at 549, ¶ 7 (quotations omitted)). Interpreting these statutes in a way that harmonizes Subsections (A) and (B), we conclude that Taxpayers' construction and installation of the wastewater collection systems satisfy the use requirement of Subsection (A) even if the systems are ultimately operated by a utility company. Further, in multi-part statutes like these, the use of the term "include" in subsection (B) is a "term of enlargement, not of limitation." *Sec. Sav. & Loan Ass'n v. Milton*, 171 Ariz. 75, 77 (App. 1991). *See also Bernhart v. Indus. Comm'n*, 200 Ariz. 410, 413, ¶ 12 (App. 2001).

### III. *Transfer of Common Areas to Homeowners' Association*

**¶15** The Department also argues that Taxpayers are not entitled to credits for storm water improvements located on common areas because the "common-area features are of course intended to be transferred to a homeowner's association." We disagree.

**¶16** First, there is nothing in the record reflecting that Taxpayers transferred common areas to a homeowner's association. Second, the

Legislature did not impose a minimum time period during which qualifying property, once purchased, constructed and/or installed, must be held to qualify for the credit. Moreover, just as Taxpayers' construction and installation of wastewater collection systems are sufficient to satisfy the use requirement in A.R.S. § 43-1081(A) and § 43-1170(A), so is their construction and installation of storm water management systems. Accordingly, we affirm the tax court's decision that Taxpayers are eligible for tax credits under the versions of A.R.S. § 43-1081 and § 43-1170 in effect at all times relevant to this appeal.

### IV. The 2005 Statutory Amendments

**¶17** We draw further support for our conclusion from amendments the Legislature made in the subject statutes in 2005. In 2005, the Legislature amended A.R.S. § 43-1081 and § 43-1170 to restrict the type of property qualifying for the tax credit. *See* 2005 Ariz. Sess. Laws, ch. 148, §§ 1, 2 (1st Reg. Sess.). The credit now applies only to expenses incurred "to prevent, monitor, control or reduce . . . pollution that results from the taxpayer's **direct operating activities**." A.R.S. §§ 43-1081(B), -1170(B) (emphasis added). In addition, the credit does not apply to:

> Any property that has a substantial use for a purpose other than the purposes described in subsection B.

> Any portion of pollution control property that is included as a standard and integral part of another property.

A.R.S. §§ 43-1081(C)(2)-(3), -1170(C)(2)-(3).[10]

**¶18** When a statute is amended "after a considerable length of time" and the amendment reflects "a clear and distinct change of the operative language," we assume the Legislature intended to change rather than clarify the law. *San Carlos Apache Tribe v. Superior Court ex rel. Cty. of Maricopa*, 193 Ariz. 195, 209-10, ¶ 31 (1999) (citing *O'Malley Lumber Co. v. Riley*, 126 Ariz. 167, 169 (App. 1980), *abrogated on other grounds by*, *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264 (1994)). *See also Sempre Ltd. P'ship v. Maricopa Cty.*, 225 Ariz. 106, 110, ¶ 17 (App. 2010) (holding that as a general rule, we "presume that an amendment changes the meaning of an existing statute." (citing *McCloe v. Utah Home Fire Ins. Co.*, 121 Ariz. 402, 403 (App. 1978), *superseded on other grounds by*, *Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226

---

[10] A detailed discussion of the legislative history involving these two statutes can be found in *Watts*, 221 Ariz. at 99-100, ¶¶ 2-7.

Ariz. 345 (2011))). Here, we presume that the 2005 amendments were intended to change, not simply clarify, A.R.S. § 43-1081 and § 43-1170. *See Microchip*, 230 Ariz. at 308, ¶ 18. *See also Watts*, 221 Ariz. at 104, ¶ 35. And because the amended statutes do not contain a retroactivity provision, they do not apply to Taxpayers' claims here. *See* A.R.S. § 1-244 (2016).

**¶19** Under this analysis, the Legislature's decision in 2005 to prohibit the credit for property "included as a standard and integral part of another property" means that before the amendment, the credit WAS allowed for such property. Accordingly, we hold that, under the versions of A.R.S. § 43-1081(C) and § 43-1170(C) in effect at the time relevant to this appeal, Taxpayers' expenditures for wastewater collection and storm water management qualified for the tax credit.

## CONCLUSION

**¶20** For the foregoing reasons, we affirm the decision of the tax court. Taxpayers request an award of attorneys' fees and costs pursuant to A.R.S. § 12-348, which authorizes a fee award to a party that brings an action challenging the assessment, collection, or refund of taxes. *See* A.R.S. § 12-348(B) (2016). In the exercise of our discretion, we award Taxpayers their reasonable attorneys' fees and costs on appeal subject to the limitation imposed by A.R.S. § 12-348(E)(5) and their compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA